IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Jeffrey D. Kuhn and Barbara K. Kuhn, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> Chesapeake Energy Corporation, ) <br> Chesapeake Exploration, L.L.C., Sullivan ) <br> Land Resources, Inc., and Jeffrey Spears, ) <br> ) <br> Defendants. ) | **ORDER** <br><br> Case No. 1:12-cv-086 |

Before the Court is the "Defendants' Motion to Dismiss" for failure to state a claim upon which relief can be granted filed on July 9, 2012. See Docket No. 3. The Plaintiffs filed a response to the Defendants' motion on July 20, 2012. See Docket No. 5. The Defendants filed a reply brief on August 3, 2012. See Docket No. 7. For the reasons set forth below, the Defendants' motion is granted in part, and denied in part. The claims for breach of contract, unjust enrichment, promissory estoppel, deceit, and civil conspiracy are dismissed. The claims for fraudulent misrepresentation and fraud in the inducement remain. Chesapeake Energy Corporation is also dismissed as a party based on lack of personal jurisdiction.

I. **BACKGROUND**

The Plaintiffs, Jeffrey D. Kuhn and Barbara K. Kuhn ("the Kuhns"), commenced this action on June 11, 2012 against the Defendants, Chesapeake Energy Corporation ("Chesapeake Energy"), Chesapeake Exploration, L.L.C. ("Chesapeake Exploration"), Sullivan Land Resources, Inc. ("Sullivan"), and Jeffrey Spears ("Spears") (collectively "Defendants"). The Kuhns alleged the

Defendants breached a contract to enter into an oil and gas lease covering certain real property located in Stark County and Hettinger County, North Dakota, by cancelling the lease before paying the bonus. See Docket No. 1-1. The Kuhns also alleged claims for unjust enrichment, promissory estoppel, fraudulent misrepresentation and fraud in the inducement, deceit, and civil conspiracy. They requested relief in the amount of the $319,686.00 bonus they allege was payable for the canceled lease, interest, and attorneys fees. The Kuhns also sought the payment of royalties they allege would have been due in the event successful oil and gas wells were drilled on the leased premises.

The matter was removed from the District Court of Stark County in the State of North Dakota to the United States District Court for the District of North Dakota, Southwestern Division, by request of Defendants pursuant to 28 U.S.C. § 1441. See Docket No. 1. This Court has original jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1332 and none of the Defendants are citizens of the State of North Dakota. The matter is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

II.     **STANDARD OF REVIEW**

When considering a motion to dismiss, the Court must construe the complaint liberally and assume all factual allegations to be true. Faibisch v. Univ. of Minn., 304 F.3d 797, 802 (8th Cir. 2002); Goss v. City of Little Rock Ark., 90 F.3d 306, 308 (8th Cir. 1996). Dismissal will not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle plaintiff to relief. Faibisch, 301 F.3d at 802.

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true. "'However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.'" Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (quoting DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002)). The court may generally only look to the allegations contained in the complaint to make a Rule 12(b)(6) determination. McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007). "[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

Rule 8 of the Federal Rules of Civil Procedure sets forth the federal pleading requirements for civil cases. Rule 8(a) provides that pleadings must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed.R.Civ.P. 8(a). In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Supreme Court clarified the pleading requirements under the Federal Rules of Civil Procedure necessary to survive a motion to dismiss for failure to state a claim. The United States Supreme Court stated,

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or a "formulaic recitation of the

3

> elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft, 556 U.S. at 677-78 (internal citations omitted).

### III.   LEGAL DISCUSSION

#### A.   FAILURE TO STATE A CLAIM

Defendants, Chesapeake Energy Corporation, Chesapeake Exploration, L.L.C., and Sullivan Land Resources, Inc., contend the complaint fails to state a claim upon which relief can be granted. See Docket No. 3. Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft, 556 U.S. at 678) (internal quotations omitted). A plaintiff must show "that success on the merits is more than a 'sheer possibility.'" Id. (citing Ashcroft, 556 U.S. at 678). A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft, 556 U.S. at 678). The court must accept all factual allegations as true, except for "legal conclusions or 'formulaic recitation of the elements of a cause of action.'" Id. (quoting

Ashcroft, 556 U.S. at 681). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Ashcroft, 556 U.S. at 679).

### 1) **BREACH OF CONTRACT**

The Kuhns assert that Defendants breached the Oil and Gas Leases ("Leases") and the contemporaneously executed Orders of Payment by failing to remit the lease bonuses within sixty days of receipt of the executed Leases and Orders of Payment by Chesapeake Exploration. See Docket No. 1-1. Both parties agree the Leases and Orders of Payment together constitute an enforceable agreement between the Kuhns and the Defendants, and therefore the general rules of contract interpretation apply. See Egeland v. Cont'l Res., Inc., 2000 ND 169, ¶ 10, 616 N.W.2d 861 (citing Johnson v. Mineral Estate, Inc., 343 N.W.2d 778, 789 (N.D. 1984)). The same general rules that govern the interpretation of contractual agreements apply to oil and gas leases. Id. (citing Johnson, 343 N.W.2d at 780).

The Court agrees with the parties that a valid contract existed. The Leases and Orders of Payment were properly signed and executed and promises were exchanged by the parties. See Irish Oil & Gas, Inc. v. Riemer, 2011 ND 22, ¶ 17, 794 N.W.2d 715 (assuming an oil and gas lease together with a bank draft payable in sixty days constituted adequate consideration to form a contract, even though no cash was exchanged). In Irish Oil & Gas, the court "[could not] say, as a matter of law, that the potential for royalty is not sufficient consideration to support the lease." Id. at ¶ 22. The Kuhns promised to permit Chesapeake Exploration to explore for and develop any oil or gas that may be discovered or produced from the Kuhns's land, subject to Chesapeake

Exploration's approval of title and payment of the bonuses. See Docket No. 1-1. The Kuhns would then receive bonuses and royalties from the oil. Taken together, the agreements and promises contain the requisite offer, acceptance, and consideration needed to form a valid contract.

Because there is an enforceable contract, "[t]he language of [the] contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02; Sorlie v. Ness, 323 N.W.2d 841, 844 (N.D. 1982). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible . . . ." N.D.C.C. § 9-07-04; Miller v. Schwartz, 354 N.W.2d 685, 689 (N.D. 1984). A contract must be read and considered in its entirety so that all provisions are weighed to determine the true intent of the parties. Irish Oil & Gas, 2011 ND 22, ¶ 15, 794 N.W.2d 715 (quoting Egeland, 2000 ND 169, ¶ 10, 616 N.W.2d 861). When several contracts involving the same matters between the same parties are involved, like the Leases and Orders of Payment here, the agreements are to be taken together as one agreement. See N.D.C.C. § 9-07-07; see also Grynberg v. Dome Petroleum Corp., 1999 ND 167, ¶ 10, 599 N.W.2d 261.

The Kuhns promised to permit Chesapeake Exploration to explore their land for any oil or gas that may be discovered, subject to Chesapeake Exploration's approval of title and payment of bonuses. See Docket No. 1-1. Chesapeake Exploration, in exchange, promised to pay the bonuses within sixty days or surrender the Leases. Chesapeake Exploration further agreed to pay a 3/16 royalty to the Kuhns out of any production that was achieved. The agreement also specifically authorized Chesapeake Exploration to "surrender" the Leases at any time and for any reason. See Docket No. 1-4. This language allowing for surrender at any time, along with the sixty day deadline in which to exercise the rights under the contract, is not an "absurdity" under N.D.C.C. § 9-07-02.

6

All requirements necessary to interpret the agreement are sufficiently described in the Leases and Orders of Payment when read together as one agreement. "If the language of a contract is clear and unambiguous, and intent is apparent from its face, there is no room for further interpretation." Habeck v. MacDonald, 520 N.W.2d 808, 811 (N.D. 1994) (citations omitted). If the Defendants chose to surrender the Lease before payment was due, the Kuhns were entitled to "retain any consideration paid at the time of signing the Lease," but the Kuhns were not entitled to any additional payments. See Docket No. 1-1. The Defendants essentially had sixty days in which they could exercise their right to explore for and produce oil and gas under the lease agreement, in exchange for first paying the bonuses.

The Defendants also retained an absolute right to surrender the "Paid-Up" Leases for any reason, without liability. The court in Irish Oil and Gas determined that a lessee has no obligation to commence operations during the primary term of the lease and thus there is no assurance of payment when the parties have entered into a "Paid-Up" lease. See Irish Oil & Gas, 2011 ND 22, ¶ 15, 794 N.W.2d 715. The Leases and Orders of Payment provide the appropriate procedure in the event the Kuhns did not receive a bonus check or received no notice of surrender. The Kuhns were required to "notify Lessee in writing and Lessee [then had] 5 business days from receipt of such written notice to make payment or surrender the lease without any liability." See Docket No. 1-1. There is no indication the Kuhns provided the required five day written notice or that the Defendants failed to respond to such notice if given. The continued effectiveness of the Leases themselves were contingent upon the paying of bonuses within sixty days. Instead of paying such bonuses, the Defendants chose to exercise their absolute right to surrender under the contract and it was not a

breach to do so under the circumstances. Accordingly, the Defendants' motion to dismiss the breach of contract claim is granted.

### 2) TORT CLAIMS

The Kuhns also assert tort claims for unjust enrichment, promissory estoppel, fraudulent misrepresentation and fraud in the inducement, deceit, and civil conspiracy.

#### a. UNJUST ENRICHMENT

In the event the Court finds a failure of the contract, the Kuhns allege a claim for unjust enrichment to seek recovery of the reasonable value of the Leases and Orders of Payment. See Docket No. 1-1. Under North Dakota law, unjust enrichment is an equitable doctrine based upon a quasi-contract or a constructive contract implied by law to prevent a person from being unjustly enriched at the expense of another. Ritter, Laber, & Assocs., Inc. v. Koch Oil, Inc., 2004 ND 117, ¶ 26, 680 N.W.2d 634 (citing Cavalier Cnty. Mem'l Hosp. Ass'n v. Kartes, 343 N.W.2d 781, 784 (N.D. 1984)). It is well-established that "[u]njust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law." Id. (citing A&A Metal Bldgs. v. I-S, Inc., 274 N.W.2d 183, 189 (N.D. 1978)). It is also well-established that unjust enrichment applies only in the absence of a contract between the parties, and there can be no implied-in-law contract where there is an express contract between the parties concerning the same subject matter. Id. at ¶ 28 (citing BTA Oil Producers v. MDU Res. Grp., Inc., 2002 ND 55, ¶ 37, 642 N.W.2d 873). Thus, when the parties have voluntarily entered into an express written contract which defines their rights, unjust enrichment is not available.

The Kuhns allege an unjust enrichment claim as an equitable remedy in the event the Court does not find a valid contract. See Docket No. 1-1. It is clear and undisputed that the two Leases and Orders of Payment define the agreements and rights attributable to each party to the contract. The Court finds, as a matter of law, that the Kuhns are not entitled to recover under a theory of unjust enrichment because there is an express written contract between the parties relative to the same subject matter as the alternative unjust enrichment claim. Therefore, the Defendants' motion to dismiss the unjust enrichment claim is granted.

### b.     PROMISSORY ESTOPPEL

Promissory estoppel provides a method for enforcing a promise that is not supported by consideration and is thereby only applicable in the absence of an otherwise enforceable contract. See Union Nat'l Bank v. Schimke, 210 N.W.2d 176, 181 (N.D. 1973); Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 934 (8th Cir. 1999). Where there is a remedy available at law or the promise is supported by consideration, the method for enforcement is an action for a breach of contract. Because the Court finds that an enforceable contract exists here, there can be no claim for promissory estoppel. The Defendants' motion to dismiss the promissory estoppel claim is granted.

### c.     DECEIT

The Kuhns allege the Defendants promised to pay bonuses regardless of the success in exploring for, developing, producing, and marketing oil, gas, and other substances, which constituted deceit on the part of the Defendants. See Docket No. 1-1. "Deceit is a tort claim available when a party has breached an obligation imposed by law to honestly deal with another

9

party." Irish Oil & Gas, 2011 ND 22, ¶ 28, 794 N.W.2d 715 (citations omitted). Under North Dakota law, an action for deceit requires a misrepresentation of facts, misleading of another, suppression of facts, or promises without an intention of performing. See Dewey v. Lutz, 462 N.W.2d 435, 440 (N.D. 1990); see also N.D.C.C. § 9-10-02. Courts have also recognized that fraud and deceit are similar concepts. Olson v. Fraase, 421 N.W.2d 820, 827 n. 3 (N.D.1988). Technically, fraud under N.D.C.C. § 9-10-03 applies only when there is a contract between the parties; deceit under N.D.C.C. § 9-10-02 applies when there is no contract between the parties. Dewey, 462 N.W.2d at 439 (citing Hellman v. Thiele, 413 N.W.2d 321, 326 (N.D.1987)). In this case, there is a valid contract between the parties, so a claim for fraud, not deceit, would be the proper claim alleged under the circumstances. The Defendants' motion to dismiss the deceit claim is granted.

### d.    CIVIL CONSPIRACY

The Kuhns contend the Defendants, acting in concert with one another, sought to control and manipulate the lease market in North Dakota by adopting a scheme and/or practice in which the Defendants would enter into oil and gas leases and orders of payment without any intention of performing its obligations thereunder, whereby Defendants were essentially involved in a civil conspiracy. See Docket No. 1-1. "A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s].'" Hurt v. Freeland, 1999 ND 12, ¶ 37, 589 N.W.2d 551 (quoting Burr v. Kulas, 1997 ND 98, ¶ 18 n. 3, 564 N.W.2d 631). The major difference

between a criminal conspiracy and a civil conspiracy is that in a civil conspiracy damages, and not the agreement, are the essence of the conspiracy. Id.

The prima facie elements of civil conspiracy have been outlined as: "1) Two or more persons, and for this purpose a corporation is a person;  2) An object to be accomplished;  3) A meeting of minds on the object or course of action;  4) One or more unlawful or overt acts; and 5) Damages as the proximate result thereof." In re North Dakota Pers. Injury Asbestos Litig. No. 1, 737 F. Supp. 1087, 1096 (D.N.D. 1990) (quoting Zelinger v. Uvalde Rock Asphalt Co., 316 F.2d 47, 51 (10th Cir. 1963)).  "To constitute a concerted action, the plaintiffs [need] to present evidence of a common plan to commit a tortious act, the participants knew of the plan and its purpose, and the participants took substantial affirmative steps to encourage the achievement of the result." Ward v. Bullis, 2008 ND 80, ¶ 31, 748 N.W.2d 397.

Many courts have adopted the view that "a corporation, acting through its agents may not be liable for conspiracy." RDO Foods Co. v. United Brands Int'l, Inc., 194 F. Supp. 2d 962, 975 (D.N.D. 2002) (citations omitted).  However, "a conspiracy may be established against agents of the corporation when the agents act outside the scope of their employment," and the agents are named as individuals in the action. Id. (citing Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir. 1987)). As alleged, Jeffrey Spears was an agent of Sullivan, Sullivan was an agent of Chesapeake Exploration, and Chesapeake Exploration was a subsidiary and agent of Chesapeake Energy. See Docket No. 1-1.  The Kuhns have not alleged that any of those persons or entities were acting outside the scope of those relationships at the time in question.  Accordingly, there can be no civil conspiracy claim regardless of whether the Defendants were named as individuals. See RDO Foods

11

Co., 194 F. Supp. 2d at 975. The Defendants' motion to dismiss the civil conspiracy claim is granted.

      e.      **FRAUDULENT MISREPRESENTATION AND FRAUD IN THE INDUCEMENT**

The Kuhns also allege the Defendants fraudulently represented to them information surrounding the bonus and royalty payments to be paid under the Leases and Orders of Payment. See Docket No. 1-1. A party bringing a fraud claim must "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "'Circumstances' include such matters as the time, place and contents of the false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995) (citations and quotation marks omitted). The purpose of the heightened pleading requirement in fraud cases is to "force the plaintiff to do more than the usual investigation before filing his complaint." Ackerman v. Nw. Mutual Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999).

Rule 9(b) requires the circumstances be pled with sufficient particularity to place defendants on notice of the precise misconduct with which they are charged to the extent an adequate answer can be prepared. See Meyer v. First Nat. Bank & Trust Co. of Dickinson, 698 F. Supp. 798, 802 (D.N.D. 1987) (citations omitted). When reading the Kuhns' complaint as a whole and not just the specific paragraphs under the fraud claim, it appears the sufficient particularity requirements can be established. See Docket No. 1-1. In the complaint at paragraph 11, Jeffrey Spears is identified as the Defendants' agent that was in contact with the Kuhns. See Docket No. 1-1. Paragraph 14 established the statements represented to the Kuhns at the time of the contact in dispute in this

action, including royalty and bonus payments to be paid.  See Docket No. 1-1.  Paragraphs 15 and 16 identified Spears, on behalf of Chesapeake Exploration and Sullivan, as contacting the Kuhns and procuring two oil and gas leases dated October 4, 2011 covering their property.  See Docket No. 1-1.

These statements in the complaint identify the time, place, and contents of the false representations, as well as the identity of the person making the representation as required for a claim to be pled with sufficient particularity.  See Murr Plumbing, Inc., 48 F.3d at 1069 (citations omitted).  Because the Court finds that the claims for fraudulent misrepresentation and fraud in the inducement have been sufficiently pled, the Defendants' motion to dismiss the fraud claim at this stage is denied.

### B.  PERSONAL JURISDICTION OVER CHESAPEAKE ENERGY

Defendants contend the Court does not have personal jurisdiction over Chesapeake Energy and all claims against Chesapeake Energy should be dismissed pursuant to Fed.R.Civ.P. 12(b)(2). See Docket No. 3.  "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction."  Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citing Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990); Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."  Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (original citation and quotation marks omitted).  The party

seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d at 647 (citations omitted).

The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process . . . ." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223 (citing Auction Effertz, Ltd. v. Schecher, 2000 ND 109, ¶ 6, 611 N.W.2d 173; Hust v. N. Log, Inc., 297 N.W.2d 429, 431 (N.D. 1980)). The Eighth Circuit Court of Appeals has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the Court must determine whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Oriental Trading Co, Inc. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

"Due process requires minimum contacts between [a] non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Dever, 380 F.3d at 1073 (citing Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). A nonresident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." Epps, 327 F.3d at 648 (citing World-Wide Volkswagen Corp., 444 U.S. at 297).

There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum: general jurisdiction and specific jurisdiction. With respect to general personal jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)). A state has specific jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state. Johnson, 444 F.3d at 956 (citing Helicopteros, 466 U.S. at 414).

The Eighth Circuit has established a five-factor test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant: "(1) the nature and quality of a defendants' contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Dever, 380 F.3d at 1073-74 (citing Burlington Indus., Inc., 97 F.3d at 1102). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). The Eighth Circuit affords "significant weight" to the first three factors. Romak USA, Inc. v. Rich, 384 F. 3d 979, 984 (8th Cir. 2004) (citing Dever, 380 F.3d at 1073-74). The Eighth Circuit's five-part test essentially "blend[s]" the tests for general and specific jurisdiction. See, e.g., Northrup King Co., 51 F.3d at 1388.

Another issue arises when a defendant is a non-resident parent corporation that merely owns the wholly-owned subsidiary. Here, Defendant Chesapeake Exploration is a wholly-owned subsidiary of Defendant Chesapeake Energy. See Docket No. 1-1. In this situation, personal jurisdiction could be properly asserted over a corporation if the subsidiary or agent is acting as its alter ego. Epps, 327 F.3d at 648-49 (citing Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt, Inc., 519 F.2d 634, 637 (8th Cir. 1975)). If the sufficiently connected subsidiary corporation is the alter ego of the non-resident corporate defendant, the subsidiary's contacts are those of the parent corporation's, and due process is satisfied. Id. (citing Lakota Girl Scout Council, 519 F.2d at 637). However, a corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. Id. (citations omitted).

As discussed above in the civil conspiracy claim, all Defendants were acting in their capacities as agents or subsidiaries of one another and not outside the scope of those relationships, making it so the subsidiary was not acting as the alter ego of the parent company. Because all individuals were acting in their official capacities, no alter ego claim for general personal jurisdiction needs to be addressed among the five factors determining personal jurisdiction.

### 1.     NATURE AND QUALITY OF CONTACTS

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir. 1992) (citing Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the

residents of the forum state. Id. (citing Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985)). The contact(s) with the forum state must be more than "random, fortuitous, or attenuated." Id. Also, the contact(s) must not be the result of "unilateral activity of another party or a third person." Id.

The Defendant Chesapeake Energy's contacts with North Dakota consist of two oil and gas leases and information mentioning North Dakota on the Chesapeake Energy website. See Docket No. 5. All other contacts by Defendant Chesapeake Energy with North Dakota were conducted exclusively through another Defendant or a third person. These contacts are not enough to find that the Defendant Chesapeake Energy "purposefully directed" their activities at the residents of North Dakota and instead are merely fortuitous in nature. The Court finds that the nature and quality of the contacts with North Dakota do not support the exercise of personal jurisdiction.

### 2. QUANTITY OF CONTACTS

It is well-established that specific jurisdiction can arise from a single contact with the forum state. Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973). There are oil and gas leases between Defendant Chesapeake Energy and individuals in North Dakota, satisfying the single contact needed. Therefore, the Court is not concerned with the number of contacts made for purposes of whether specific jurisdiction exists.

Quantity is a consideration when general jurisdiction is alleged. Lakin v. Prudential Sec, Inc., 348 F.3d 704, 712 (8th Cir. 2003). General jurisdiction arises with continuous and systematic contacts between the defendant and the forum state. Helicopteros, 466 U.S. at 415-16. As mentioned above, Defendant Chesapeake Energy's contact with the forum state consists of two oil and gas leases and information mentioning North Dakota on the Chesapeake Energy website. The

Court finds that the quantity of contacts were not continuous and systematic, and this factor does not weigh in favor of exercising personal jurisdiction under a general jurisdiction analysis.

### 3.     RELATION OF CONTACTS TO CAUSE OF ACTION

The Defendant Chesapeake Energy's contacts with North Dakota, which consist of two other leases entered into with residents of North Dakota, do not arise out of the cause of action in issue. See Docket No. 7.  This Court may have specific jurisdiction over Chesapeake Energy to adjudicate a claim "arising out of" those leases, but two oil and gas leases do not create "continuous and systematic" contacts necessary for general personal jurisdiction.  Therefore, the Court finds that the contacts are not directly related to this cause of action and this factor does not weigh in favor of exercising personal jurisdiction.

### 4.     INTEREST OF THE FORUM STATE

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003); Northrup King Co., 51 F.3d at 1388; Aaron Ferer & Sons Co. v. Am. Compressed Steel Co., 564 F.2d 1206, 1210 n.5 (8th Cir. 1977).  The interest of the forum state is the fourth factor to be considered for purposes of exercising personal jurisdiction. It stands to reason that North Dakota has an interest in adjudicating these claims and providing a forum for its residents.  See Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997) (quickly dispensing with this part of the test by assuming the forum state has an interest in providing a forum for its residents).  Designating North Dakota as the forum is also supported by conflict of law rules,

where it is recognized that the laws of "real property are usually governed by the particular states." See United States v. Albrecht, 496 F.2d 906, 911 (8th Cir. 1974). The Court finds that North Dakota's interest in adjudicating this dispute is sufficient and this factor weighs in favor of exercising personal jurisdiction.

### 5.    CONVENIENCE OF THE PARTIES

The Kuhns are residents of North Dakota and own property in North Dakota that is the subject of this dispute. The Defendants, Chesapeake Energy, Chesapeake Exploration, and Sullivan, are headquartered or have their principal place of business in Oklahoma. The Defendant Spears is a citizen of Michigan. The Court finds that North Dakota would be a convenient forum for this dispute because the Kuhns are residents and the property is located in North Dakota. Therefore, this factor weighs in favor of exercising personal jurisdiction, but as stated above, the last two factors are of secondary importance. See Stanton, 340 F.3d at 694; Northrup King Co., 51 F.3d at 1388; Aaron Ferer & Sons Co., 564 F.2d at 1210 n.5.

Based on Chesapeake Energy's minimal contacts with North Dakota, and the totality of the circumstances, the Court expressly finds that exercising personal jurisdiction over the Defendant Chesapeake Energy would violate due process. See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). The exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. The Kuhns have failed to sustain their burden of proof, and have failed to establish the Court's in personam jurisdiction. The Court finds it lacks personal jurisdiction over the Defendant Chesapeake Energy, and the Defendants' motion to dismiss all claims against Chesapeake Energy based on lack of personal jurisdiction is granted.

### IV.     CONCLUSION

The Court has carefully considered the pleadings, the Defendants' motion and reply, and the Plaintiffs' response.  For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.  See Docket No. 3.  The Plaintiffs' claims for breach of contract, unjust enrichment, promissory estoppel, deceit, and civil conspiracy are dismissed.  The Plaintiffs' claims for fraudulent misrepresentation and fraud in the inducement remain.  Defendant Chesapeake Energy Corporation is also dismissed as a party.

**IT IS SO ORDERED.**

Dated this 25th day of September, 2012.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court